UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17bk18780 |
| | ) | |
| Christina Woodruff, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The matter before the court is the Objection of Wheeler Financial, Inc.[,] to Chapter 13 Plan [Dkt. No. 129] (the "Confirmation Objection"), filed by Wheeler Financial, Inc. ("Wheeler") in the above-captioned case, objecting to the confirmation of the Debtor's proposed chapter 13 plan, Official Form 113—Chapter 13 Plan [Dkt. No. 106] (the "Proposed Plan"). Also before the court is the Objection to Claim #7-2 of Wheeler Financial, Inc[.] [Dkt. No. 132] (the "Claim Objection") filed by Christina Woodruff (the "Debtor"), seeking to have the court determine Claim No. 7-2 (the "Claim") filed by Wheeler.

In the Confirmation Objection, Wheeler requests that the court reconsider and reverse its prior ruling on a debtor's ability to treat tax purchaser claims under a chapter 13 plan, *see In re Robinson*, 577 B.R. 294 (Bankr. N.D. Ill. 2017) (Barnes, J.), but at the same time suggests that *Robinson*, if left unaltered, requires it to succeed on the Claim Objection. In the Claim Objection, the Debtor requests partial disallowance of the Claim by reducing the amount of the Claim to the statutory redemption amount owed under Illinois law. Barring that, the Claim Objection seeks a determination of the allowed amount of the Claim.

For the reasons more fully stated herein, neither the Confirmation Objection nor the Claim Objection prevails in its primary contentions.

The Confirmation Objection is not well taken in its primary contention. Not only has the argument in and regarding the Confirmation Objection failed to demonstrate that the court's ruling in *Robinson* was incorrect in any way, that argument has in fact reinforced the court's conclusions as the correct ones. However, given that the Claim as determined by the court in this Memorandum Decision is not fully addressed in the Proposed Plan, the Confirmation Objection is sustained in that limited respect only.

The Claim Objection also does not succeed in its primary contention, that the Claim should be limited to the amount due under Illinois law to redeem the property tax lien purchased by Wheeler. Nonetheless, the Claim Objection succeeds insofar as it obtains herein the determination of the allowed amount of the Claim. For the reasons stated more fully below, the court determines that, irrespective of whether the statutory deadline for redemption of the sold taxes has passed, a tax purchaser has a perfected *in rem* claim for the statutory redemption amount. A tax purchaser also has a contingent, unperfected *in rem* claim for its contingent equitable right to seek a tax deed that

exists irrespective of whether the redemption period has passed. Such unperfected *in rem* interest is unsecured both by the express terms of the Bankruptcy Code (defined below) and as it is subject to the trustee's avoidance power as a hypothetical lien creditor. The resulting allowed unsecured claim is determined herein, given the likelihood that the contingency will occur with the passing of the redemption period, to be the fair market value of the property less the preceding secured claim for the redemption amount. As a result, the Claim Objection is sustained in part and overruled in part, in the manner described herein.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte,* whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, the bankruptcy judge must also have constitutional authority to hear and determine a matter. *See Stern v. Marshall,* 564 U.S. 462 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.,* or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead,* 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

An objection to a bankruptcy plan may only arise in a case under the Bankruptcy Code and is part of the process of confirming a plan, which is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(L); *In re Shelton,* 592 B.R. 193, 198 (Bankr. N.D. Ill. 2018) (Barnes, J.). Similarly, an objection to a claim may only arise in a case under the Bankruptcy Code, arises under section 502 of the Bankruptcy Code and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(B); *In re Montalbano,* 486 B.R. 436, 438-39 (Bankr. N.D. Ill. 2013) (Barnes, J.); *see also Lenior v. GE Capital Corp. (In re Lenior),* 231 B.R. 662, 667 (Bankr. N.D. Ill. 1999) (Schmetterer, J.).

More importantly, no party has contested the jurisdiction or authority of this court to enter final orders in this matter. Accordingly, determination of both the Confirmation Objection and the Claim Objection is within the scope of the court's jurisdiction, statutory and constitutional authority.

## BACKGROUND AND PROCEDURAL HISTORY

The matter before the court is the culmination of a complicated series of events in the Debtor's bankruptcy case. Neither of the parties appears to challenge the factual underpinnings, as described below.

A.   Events Prior to the Debtor's Bankruptcy Case

The Debtor is the owner of the property commonly known as 14100 West Laramie Court, Crestwood, Illinois 60445 (the "Property"). The Property appears to be the Debtor's residence.

Prior to the commencement of the above-captioned bankruptcy case, the Debtor failed to timely pay various property taxes owed to Cook County, Illinois. At the annual Cook County tax sale in August 2014, Wheeler purchased the Debtor's delinquent property taxes and in exchange received a lien on the Property for the payment of the purchase price plus interest and certain costs and fees set by statute (the "Redemption Amount"). On November 16, 2016, Wheeler filed a petition for a tax deed in the Circuit Court of Cook County pursuant to 35 ILCS 200/22-30. *In re Application of County Treasurer for Judgment & Order of Sale*, Cert. No. 12-0000820, Case No. 2016 C0TD 4494 (Ill. Cir. Ct. Cook Cty., filed Nov. 16, 2016). The filing of the tax deed petition invoked the process under Illinois law that would allow, should all of the applicable conditions be met, Wheeler to obtain ownership of the Property by receiving a court-ordered tax deed. 35 ILCS 200/22-40(c).

The tax sale procedures afforded the Debtor the opportunity to redeem the taxes sold to Wheeler and thus extinguish Wheeler's lien by paying the Redemption Amount. 35 ILCS 200/21-345 to 397. The Redemption Amount was required to be paid to Cook County prior to the statutorily-determined deadline (the "Redemption Deadline"). *Id.* Payment of the Redemption Amount would prevent Wheeler from obtaining the tax deed. 35 ILCS 200/21-390 ("The receipt of the redemption money ... shall operate as a release of the claim to the property ....").

The Redemption Deadline, as extended by Wheeler, was May 12, 2017, which passed without the Debtor having exercised her right to redeem the Property. Conf. Obj., at pp. 2-3. Before Wheeler could take the next steps toward tax deed ownership, however, the Debtor filed for bankruptcy.

B.   The Debtor's Chapter 7 Case

On June 21, 2017 (the "Petition Date"), the Debtor commenced the above-captioned bankruptcy case by filing the Voluntary Petition for Individuals Filing for Bankruptcy, Official Form 101 [Dkt. No. 1] (the "Petition"). In the Petition, the Debtor requested relief under chapter 7 of the Bankruptcy Code. *Id.* Within a week of the filing of the Petition, the Debtor filed her schedules A/B, C, D, E/F, G, H, I, J, J-2 [Dkt. No. 12] (collectively, the "Schedules" and as to each, "Schedule __"), each on the respective official forms.

In Schedule A/B, the Debtor listed the Property as her only real property. Schedule A/B. The Debtor estimated the Property's value as $150,000.00 and the Debtor claimed an exemption with respect to the Property. *Id.*; Schedule C. The Debtor did not, however, schedule any secured claims on the Property. Instead, the Debtor scheduled the Cook County Clerk's Office as having a $48,000.00 unsecured, contingent claim for "property taxes." Schedule E/F.

On July 18, 2017, Wheeler moved for relief from the automatic stay applicable to the Property. Motion of Wheeler Financial, Inc.[,] for Relief from the Automatic Stay [Dkt. No. 21] (the "Stay Relief Motion"). In the Stay Relief Motion, Wheeler failed to cite to *Robinson* and instead argued the chapter 13 case law that existed prior to *Robinson* clarifying the treatment of tax purchase claims in chapter 13 matters. *Id.*[1] Both the Debtor and Alex D. Moglia, the chapter 7 trustee appointed in the case (the "Chapter 7 Trustee"), opposed the Stay Relief Motion. Given that the Debtor's bankruptcy case was one under chapter 7 and not one under chapter 13 and despite the existence of *Robinson* and Wheeler's failure to cite to it, the court set the matter out on briefing and scheduled the matter for hearing.

After the hearing on the Stay Relief Motion, the Chapter 7 Trustee indicated that he had examined the Debtor and had found assets to administer. Initial Report of Assets [Dkt. No. 56]. As a result, a bar date was set in the chapter 7 case for December 22, 2017 (the "Bar Date"). Notice Fixing Time for Filing Claims [Dkt. No. 59]. On December 18, 2017, prior to the Bar Date, Wheeler filed its original Proof of Claim 7-1 on Official Form 410 (the "Original Claim"). The Original Claim was filed in error and Wheeler was notified of the same, though it did not address the error until it later amended the Original Claim. The Original Claim asserted only a redemption claim of $46,615.14.

Before the Stay Relief Motion was resolved, the matter was complicated by the Debtor seeking to convert the case to one under chapter 13. Motion to Convert Case to Chapter 13 [Dkt. No. 77] (the "Motion to Convert"). As a discharge had automatically been issued in the case, the Debtor also sought to vacate the discharge in order to allow conversion to occur. Motion to Vacate O[r]der of Discharge [Dkt. No. 76] (the "Motion to Vacate Discharge"). Both Wheeler and the Chapter 7 Trustee opposed the Motion to Convert and the Motion to Vacate Discharge.

After several hearings and supplemental briefing by the parties, on April 18, 2018, the court denied the Stay Relief Motion and granted the Motion to Vacate Discharge and Motion to Convert. *See* Orders [Dkt. Nos. 100, 99 & 98, respectively].

C.    The Debtor's Converted Chapter 13 Case and this Dispute

In the converted case, the Debtor presented her Proposed Plan. The Proposed Plan seeks court valuation of multiple secured claims, including those of the Cook County Treasurer, but

---

[1]    All counsel are hereby reminded of their obligation under Canon 3.3(a)(2) of the American Bar Association's Model Rules of Professional Conduct (the "ABA Model Rules") "to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." The ABA Model Rules are applicable by way of Rule 83.50 of the Local Rules of the United States District Court Northern District of Illinois, made applicable in this court by Rule 9029-4A of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Illinois.

despite the existence of Wheeler's Original Claim, made no mention of Wheeler. Proposed Plan, § 3.2. In so doing, the Proposed Plan asserts that the value of the Property is $272,508.00.[2] *Id.*

Wheeler, unsurprisingly, objected. The main thrust of the Confirmation Objection is that the court should reverse its position in *Robinson*. While there has been no further briefing on the Confirmation Objection, *per se*, a large amount of the parties' briefing on the Claim Objection and argument in the hearings has been spent on the *Robinson* issues. The Confirmation Objection also asserts, without evidence, that the value of the Property exceeds $300,000.00.

On the same day it filed the Confirmation Objection, Wheeler amended the Original Claim by filing the Claim. In the Claim, Wheeler once again asserted that it has a secured claim, still noting the existence of its perfected tax lien in the Property, but claimed $300,000.00 as the amount owed, not just the $46,615.14 redemption claim asserted in the Original Claim.

On August 21, 2018, the Debtor filed the Claim Objection. On September 18, 2018, Wheeler responded. Response of Wheeler Financial, Inc.[,] to Debtor's Objection to Claim #7-2 of Wheeler Financial, Inc. [Dkt. No. 133] (the "Response"). Thereafter, confirmation hearings including both the Confirmation Objection and the Claim Objection were scheduled for September 20, 2018 and October 4, 2018. At the October 4, 2018 confirmation hearing, the court set a deadline for the Debtor to reply and continued the Claim Objection for hearing to November 8, 2018. Order [Dkt. No. 140]. On October 30, 2018, the Debtor timely filed her reply. Debtor's Reply in Support of Her Objection to Claim #7-2 of Wheeler Financial, Inc[.] [Dkt. No. 141].

Several hearings took place between November 8, 2018 and January 10, 2019. At one of these hearings, the court expressed an initial viewpoint that the Claim Objection was well taken and the Confirmation Objection was not. The court's position on the latter was the result of two factors. First, despite Wheeler's contentions, the Claim does not clearly assert how Wheeler is owed the full value of the Property as claimed. Second, as the court initially concluded that such a claim would, by its nature, be nonrecourse, the secured aspect of such claim appeared to be of a very tenuous nature.

On January 10, 2019, the court again expressed these concerns to the parties and, given the passage of time, ordered the parties submit further evidence on the Redemption Amount—an amount the parties needed certainty to regardless of the remainder of the Claim. Order [Dkt. No. 146]. On January 24, 2019, Wheeler filed a statement detailing how it calculated the Redemption Amount. Statement of Wheeler Financial, Inc.[,] Regarding Secured Claim Amount [Dkt. No. 147] (the "Redemption Statement"). The Redemption Statement asserts that the Redemption Amount due to Wheeler is $51,844.84 (the "Redemption Claim"). On February 6,

---

[2]    On May 2, 2018, the same day the Debtor filed the Proposed Plan, the Debtor also filed Amended Schedules A/B, C, H and I/J [Dkt. No. 105]. In the Amended Schedule A/B & C, the Debtor now asserts that the Property is valued at $272, 508.00, the same value as is contained in the Proposed Plan. The Debtor also indicated in the Amended Schedules that her interest in the Property is somehow only one half of the entire value but has presented no arguments to the court as to why this may be the case and how that might affect the analysis herein.

2019, Wheeler further amended the Claim to assert the Redemption Claim.[3] The Debtor does not appear to challenge the amount of the Redemption Claim.

On February 7, 2019, the Confirmation Objection and the Claim Objection were initially taken under advisement. On March 28, 2019, the court announced the decision contained herein. Because, for the reasons discussed below, determining the nature of Wheeler's Claim necessitated determinations of Bankruptcy Code sections which had not been addressed by the parties, the court also afforded the parties an opportunity to object to the procedure under which the court had reached those issues. By order of the court, that objection deadline was set for April 11, 2019. Scheduling Order [Dkt. No. 159]. No such procedural objections have been filed by the deadline to do so and, therefore, the Confirmation Objection and the Claim Objection are now fully under advisement.

This Memorandum Decision constitutes the court's final determination of the matters under advisement, unless expressly stated otherwise herein. In reaching its conclusion, the court has reviewed all of the foregoing filings and considered the statements of the parties at the various hearings. The court also has taken into consideration all exhibits submitted in conjunction therewith.

As these items do not constitute an exhaustive list of the filings in this bankruptcy, the court has also taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n. 5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## DISCUSSION

The primary question presented in the Confirmation Objection is whether the court should reconsider its ruling in *Robinson*. Because it is the ruling in *Robinson* upon which the Debtor's Proposed Plan and the Claim Objection rely, the court takes up the *Robinson* challenge and interpretation matter first. After having done so, the court will consider the propriety of the Claim and the Proposed Plan in light of the determination on *Robinson*.

A.    The Confirmation Objection and *Robinson*

1.    *The Ruling in* Robinson

In *Robinson*, the court was presented with the question regarding the propriety of a relief from stay motion in a chapter 13 case where the debtor's chapter 13 plan attempted to treat both the real property and the debt subject to an Illinois tax lien purchase despite the redemption period

---

[3]    That further amended claim, Claim No. 7-3, also appears to retract Wheeler's claims to an interest in the Property beyond the Redemption Amount. As discussed in court, this was done by Wheeler in presumed compliance with the court's earlier statements regarding the tenuous nature of its larger claim. Because, as set forth herein and as noted at subsequent hearings, that viewpoint has changed, the court does not and cannot treat such amendment as binding on Wheeler. For that reason, this Memorandum Decision rules on the Claim Objection, which is an objection to the Claim, as if that Claim had not been superseded by amended Claim No. 7-3, but inclusive of the Redemption Claim set forth above.

arguably having expired prior to the commencement of her bankruptcy case. *Robinson*, 577 B.R. at 296.

The tax purchaser in *Robinson* argued that an earlier decision of another judge of this court required the court to lift the stay as, per that decision, the debtor lacked sufficient interest in the property to administer in a chapter 13 plan after the expiration of the redemption period. *Id.* at 299 (*citing In re Bates*, 270 B.R. 455, 459-61 (Bankr. N.D. Ill. 2001) (Wedoff, J.)). "*Bates* concludes that a debtor may only treat a tax purchaser's claim in bankruptcy if the redemption period had not expired prior to the commencement of the case, equating any treatment in bankruptcy to redemption itself." *Robinson*, 577 B.R. at 300 (*citing Bates*, 270 B.R. at 465 ("[T]he only permissible treatment of the [tax purchaser's] claim is through redemption.")). Part of *Bates'* logic in reaching that conclusion was that a chapter 13 plan redeems the property and thus such a redemption right must exist on the filing date in order for a plan to be predicated upon it. *Id.*

As noted by this court, *id.*, the *Bates* decision is no longer good law in this Circuit in light of the recent decisions by the Seventh Circuit Court of Appeals. *Smith v. SIPI, LLC (In re Smith)*, 811 F.3d 228 (7th Cir. 2016) ("*Smith II*"), *cert. denied* 137 S. Ct. 103 (2016); *In re LaMont*, 740 F.3d 397 (7th Cir. 2014); *Smith v. SIPI, LLC (In re Smith)*, 614 F.3d 654 (7th Cir. 2010) ("*Smith I*"). *Smith I* and *Smith II* suggest that a transfer of real property via a tax deed is avoidable as a constructively fraudulent transfer. *Robinson*, 577 B.R. at 301-02. In *LaMont*, on the other hand, the Seventh Circuit directly addressed the propriety of stay relief for tax purchasers, but did so in a case where the redemption deadline had not passed. *Id.* at 303-04.

In considering the foregoing and especially in light of the Seventh Circuit's statements regarding a debtor's continuing interest in property during the Illinois tax sale and redemption process, this court concluded that such an interest remained an ownership interest at all points up to the issuance of a tax deed and, as a result, was capable of being treated under a chapter 13 plan. *Id.* at 303 (*citing LaMont*, 740 F.3d at 406 ("A property subject to a Certificate of Purchase still belongs to the delinquent taxpayer, legally and equitably.") (*citing Smith I*, 614 F.3d at 658-59)); *see also* 11 U.S.C. §§ 1322(b)(8) & (9).

Thus, as this court in *Robinson* made clear, "the passing of the redemption period is not a material event as it relates to the rights in question. A debtor whose period for redeeming taxes sold in Illinois has passed prior to commencing his or her case may nonetheless treat the tax purchaser's claim under a chapter 13 plan if a tax deed has not yet issued and recorded." *Robinson*, 577 B.R. at 299. *Robinson* did not go beyond determining the property rights and thus the ability to treat claims and property under a chapter 13 plan. The court did not address how exactly a tax purchaser's claim would be comprised and valued at the different stages of the Illinois tax sale and redemption process as such a determination would have been advisory and, thus, improper. *Id.* at 305.

2.    *Reconsideration of the* Robinson *Ruling*

As noted above, Wheeler seeks in the Confirmation Objection to have the court reconsider its determination in *Robinson*. This court is, after all, not the court of last resort in this jurisdiction for issues such as these and *stare decisis* does not therefore require adherence to its rulings from other matters. Wheeler was also not a party to the *Robinson* matter.

Wheeler does not, however, persuade the court to reach a different result. In *Robinson*, this court followed the Seventh Circuit in concluding that a debtor's rights with respect to the property are not substantively affected by the expiration of the redemption period. *Robinson*, 577 B.R. at 299; *see LaMont*, 740 F.3d at 406 ("A property subject to a Certificate of Purchase still belongs to the delinquent taxpayer, legally and equitably."); *Smith I*, 614 F.3d at 660 ("[A]fter the expiration of the redemption period but before the issuance and recording of the tax deed, the debtor retains significant ownership rights while the tax buyer acquires only a contingent right to a tax deed."); *see also In re Application of County Treasurer,* 914 N.E.2d 1158, 1165 (Ill. App. Ct. 2009) (The tax sale of a debtor's property only entitles the tax buyer to a certificate of purchase, 35 ILCS 200/21-250, which "has no effect on the delinquent property owner's legal or equitable title to the property[.]").

When asked what rights of ownership it had acquired after the passing of the Redemption Deadline, Wheeler was unable to demonstrate any rights other than the contingent remedy—the ability to seek the tax deed—noted in *Smith I*. Every scenario posed by the court, *e.g.*, the ability to collect rent on and extract resources from the Property, the continuing obligation to pay taxes and comply with applicable law, the ability to collect insurance proceeds relating to the Property and the treatment of Wheeler's rights in an intervening foreclosure by another secured creditor, furthered the conclusion that the Debtor's rights to the Property remain predominate until the tax deed is issued.

There is also no question that those predominate legal and equitable rights in the Property have become property of the Debtor's bankruptcy estate, as

> [t]he commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a). The scope of this provision is "broad." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-5 (1983). As the Seventh Circuit Court of Appeals has noted, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Carousel Int'l Corp.,* 89 F.3d 359, 362 (7th Cir. 1996) (internal quotation and citation omitted).

*In re West*, 507 B.R. 252, 257 (Bankr. N.D. Ill. 2014) (Barnes, J.).

As a result, the Debtor may treat the Property under her Proposed Plan even though the Redemption Deadline has passed. 11 U.S.C. §§ 1322(b)(8) & (9).

Wheeler also challenges the court's conclusion in *Robinson* that tax purchasers possess a claim capable of treatment under a chapter 13 plan. *Robinson*, 577 B.R. at 305 ("[A] tax purchaser is clearly now a holder of a claim that may be treated under a plan."); *see also id.* at 303 (until a tax deed is issued, a tax purchaser has "a lien against the property combined with equitable remedies").

While it may be the case that Wheeler's status as a creditor for the direct payment of the Redemption Amount is in question, *see, e.g.*, *Pate v. Tow (In re Clark)*, Case No. 18-20518, --- F.3d ---,

2019 WL 1771957, *3-4 (5th Cir. Apr. 23, 2019),[4] the absence of such a direct, *in personam* claim does not mean that Wheeler is not a creditor with a claim.

As discussed in more detail below, claims include *in rem* claims as against property of the estate, not just *in personam* claims against a debtor. 11 U.S.C. § 101(5) (expressly including contingent claims and equitable remedies in the definition of claim); 11 U.S.C. § 502(a)(1) (providing that a claim will only be disallowed if "unenforceable against the debtor *and property of the debtor*") (emphasis added); *see also Johnson v. Home State Bank*, 501 U.S. 78, 78 (1991) ("Congress intended in § 101(5) to incorporate the broadest available definition of 'claim' ...."). In *Johnson*, the Supreme Court made clear that claims in bankruptcy included claims against property even where no *in personam* claim against the debtor existed. 501 U.S. at 78. The Seventh Circuit's holding in *LaMont* makes it clear that this reasoning applies to the claims of tax purchasers, 740 F.3d at 409 ("The plan is treating his *secured claim, not* formally redeeming the property.") (emphasis added), and nothing argued here by Wheeler changes that result.[5] No argument presented by Wheeler leads to a contrary result.

Thus Wheeler's *in rem* rights vis-à-vis the Property are a claim that, pursuant to the Bankruptcy Code, 11 U.S.C. §§ 1322(b)(8) & (9), may be treated in the Debtor's Proposed Plan.

For the foregoing reasons, Wheeler's challenge to *Robinson* fails.

3.    *The Reserved Issue from* Robinson

At the same time as it challenges *Robinson*, Wheeler also argues that *Robinson* dictates a result in its favor on the Claim Objection. Recall that *Robinson* concludes that "[a] debtor whose period for redeeming taxes sold in Illinois [that] has passed prior to commencing his or her case may nonetheless treat those taxes under a chapter 13 plan if a tax deed has not yet issued and recorded." *Robinson*, 577 B.R. at 299. *Robinson* answers that question quite clearly.

What treatment can be provided and what the tax purchaser's claim would be comprised of and valued, however, were not reached in *Robinson*.

---

[4]       In *Clark*, the Fifth Circuit contended with the Illinois domestic support laws, which are no less confusing than the tax sale laws at issue here. It concluded that domestic support recipients were not creditors for the purposes of notice of the commencement of a bankruptcy case when the legal obligations in question were "dealt with" between the debtor and the Illinois Department of Healthcare and Family Services and not between the debtor and the recipients. *Clark*, 2019 WL 1771957, *3. That result seems to understate the rights of the recipients under Illinois law. Nonetheless, if it were to hold true in this Circuit, a parallel result might result between the Debtor and Wheeler with respect to its *in personam* claim given that the Redemption Amount is payable to the taxing authority, not the tax purchaser. *See infra.*

[5]       In its Response, Wheeler implies that it only filed the Claim to comport with the court's position in *Robinson* but that it "does not believe that it holds a 'claim' at all." Wheeler, however, submitted the Original Claim in this case on December 17, 2017—long before this court had ruled on the pending motions in the chapter 7 case and thereby applied *Robinson* to the matter at hand. As noted above, while it is true that neither this court nor Wheeler is bound to follow *Robinson* until applied to this matter, *Robinson*'s existence cannot be ignored. *See supra* n.1. Wheeler knew as much when it chose to file the Stay Relief Motion but made no mention of *Robinson* therein. It showed in so doing that it was capable of acting in contravention of *Robinson. Robinson* thus did not compel Wheeler to file the Original Claim. In filing its Original Claim, no matter the reason, Wheeler conceded that it had a claim. Wheeler's arguments to the contrary are disingenuous.

Nonetheless, Wheeler argues in the Response that the court acknowledged that the amount of a tax purchaser's "claim would change after the redemption deadline expires." Resp., at p. 4. The court did no such thing. The parties in *Robinson* did not reach this issue and the court therefore carefully did not opine on it. In reserving on this issue, the court stated that "the running of the redemption period prior to the commencement of a bankruptcy case *may be meaningful to determine the tax purchaser's bankruptcy claim.*" *Id.* at 305 (emphasis added). It also may not be. That was the point of the court's reservation on this issue. Thus the question preserved in *Robinson*—what effect does the expiration of the redemption period have on a tax purchaser's claim—has not been determined and is properly before the court today.

For the foregoing reasons, the Confirmation Objection is not well taken, except to the limited extent that the court's ruling on the Claim Objection results in the Proposed Plan failing to properly address the Claim. The court turns to that question next.

## B.    The Claim Objection

In the Claim Objection, the Debtor contends that Wheeler incorrectly applies *Robinson* in asserting the Claim for the value of the Property. The Debtor also argues that Wheeler has failed to establish a value for the Property in excess of the amount provided in the Debtor's Proposed Plan.

In determining the resolution of the Claim Objection and the propriety of the Claim, the court looks first to the applicable standards in the Bankruptcy Code.

### 1.    *The Standards for Claims Objections*

Section 502(a) of the Bankruptcy Code states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). As this court has therefore stated,

> [a] proof of claim filed in accordance with 11 U.S.C. § 501 constitutes *prima facie* evidence of the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f). The party objecting to claim allowance carries the burden of rebutting the proof of claim. *In re Sentinel Mgmt. Group, Inc.,* 417 B.R. 542, 550 (Bankr. N.D. Ill. 2009) (Squires, J.); *In re J.S. II, L.L.C.,* 389 B.R. 563, 570 (Bankr. N.D. Ill. 2008) (Cox, J.); *In re Vastag,* 345 B.R. 882, 885 (Bankr N.D. Ill. 2006) (Schmetterer, J.). To rebut the presumption of validity of a claim, an objection must be premised on the grounds for disallowance set forth in section 502(b). *Sentinel Mgmt. Group,* 417 B.R. at 550; *Vastag,* 345 B.R. at 885.

*Ebner v. Kaiser (In re Kaiser),* 525 B.R. 697, 704 (Bankr. N.D. Ill. 2014) (Barnes, J.).

The ultimate burden of persuasion always remains with the claimant to establish entitlement to its claim. *In re Kreisler,* 407 B.R. 321, 325 (Bankr. N.D. Ill. 2009) (Squires, J.). As the objecting party here, the Debtor carries the initial burden to overcome the *prima facie* presumption, but Wheeler carries the ultimate burden of persuasion to show its entitlement to the Claim, including the amount of its Claim. "Once the objector has produced some basis for calling into question allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim is in fact allowable." *In re O'Malley,* 252 B.R. 451, 455-56 (Bankr. N.D. Ill. 1999) (Schmetterer, J.).

Section 502(b) instructs the court to determine the amount of the Claim as of the Petition Date and to upset the presumed allowance of the Claim only if and only to the extent that one of nine enumerated grounds for disallowance exist. *See* 11 U.S.C. §§ 502(b)(1)-(9); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 452 (recognizing that "claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed"); *In re Budd Co., Inc.*, 540 B.R. 353, 359-60 (Bankr. N.D. Ill. 2015) (Schmetterer, J.). Section 502(b) is understood to stand for the proposition that "creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provision of the Bankruptcy Code." *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000); *In re Caesars Entm't Operating Co., Inc.*, 588 B.R. 32, 41 (Bankr. N.D. Ill. 2018) (Goldgar, J.) (*quoting Raleigh*).

Here, the Debtor challenges whether Wheeler's Claim is legally cognizable. As such, it is properly viewed as an objection under section 502(b)(1), arguing in essence that the Claim "is unenforceable against the [D]ebtor and property of the [D]ebtor ... under ... applicable law." 11 U.S.C. § 502(b)(1). That necessitates an inquiry into the underlying substantive law.

2. *Wheeler's Claim*

Neither party appears to dispute that Wheeler has properly purchased the outstanding due and unpaid 2012 tax principal and interest owed to Cook County, Illinois. Such taxing authorities are entitled to sell such tax obligations in Illinois. 35 ILCS 200/21-205. The winning bidder pays the amount of the outstanding taxes on the property to the taxing authority and receives in return a certificate of purchase. 35 ILCS 200/21-240, 21-75; *Gan B, LLC v. Sims*, 575 B.R. 375, 378 (N.D. Ill. 2017). Attached to the Original Claim is a Certificate of Purchase showing that Wheeler purchased that liability on August 4, 2014. Claim No.7-1, App. at p 4. A Certificate of Purchase is issued to memorialize the tax sale, 35 ILCS 200/21-250, and thus stands as good evidence to the transaction having occurred.

Wheeler has therefore asserted the Claim which, a discussed above, has gone through several iterations/amendments. In the Claim, as subject to the Claim Objection, Wheeler asserts a secured claim for the value of the Property arising out of its rights as purchaser of delinquent tax obligations assessed to the Property in accordance with Illinois law.

As will be shown below, Wheeler's rights in this regard fall into two distinct categories. First is Wheeler's right to the statutory Redemption Amount under Illinois law. This is the tax purchaser's secured claim upon which *LaMont*, and therefore *Robinson*, is predicated. *LaMont*, 740 F.3d at 409 ("The plan is treating [the tax purchaser's] secured claim[.]"); *Robinson*, 577 B.R. at 305 ("[A] tax purchaser is clearly now a holder of a claim that may be treated under a plan."). Second is Wheeler's contingent, equitable remedy referenced in *LaMont*, *Smith I* and *Robinson*. *LaMont*, 740 F.3d at 408 (referring to these rights repeatedly as equitable remedies); *Smith I*, 614 F.3d at 660 ("[T]he tax buyer acquires only a contingent right to a tax deed."); *Robinson*, 577 B.R. at 303 (a tax purchaser has "a lien against the property combined with equitable remedies").

The court will consider each aspect of the Claim in turn.

a. The Secured Claim

The Bankruptcy Code defines "claim" to mean a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

As noted above, no one questions that Wheeler has properly purchased outstanding due and unpaid tax principal and interest assessed to the Property.

Due to the peculiarities of Illinois law,[6] Wheeler does not, by virtue of having purchased these delinquent taxes, have an *in personam* claim against the Debtor herself. The obligation owed to Wheeler is not owed by the Debtor as there is no recourse against a debtor personally for such sold taxes under Illinois law. *In re Davenport*, 268 B.R. 159, 165 (Bankr. N.D. Ill. 2001) (Schmetterer, J.); *cf.* 35 ILCS 200/21-75 (tax foreclosures are *in rem* proceedings). Instead, "[a] certificate of purchase for delinquent taxes is a species of personal property," *City of Chi. v. City Realty Exch., Inc.*, 262 N.E.2d 230, 232 (Ill. App. Ct. 1970), that has four possible statutory recoveries: (1) from the county, if the taxes are redeemed;[7] (2) from the county if a "sale-in-error" is declared, 35 ILCS 200/22-80(a); (3) merger into a tax deed that is issued, 35 ILCS 200/22-40(b); and (4) from the county if a tax deed is vacated by court order. 35 ILCS 200/22-80(a).

The tax sale process extinguishes the debtor's personal liability on taxes as the purchaser pays that liability to the taxing authority. *Bonfiglio v. Citifinancial Servicing, LLC*, Case No. 14 C 9254, 2015 WL 5612194, at *2 (N.D. Ill. Sept. 23, 2015). What remains is a proceeding *in rem. Phx. Bond & Indem. Co. v. FDIC*, Case No. 18 C 6897, 2019 WL 1552758, at *2 (N.D. Ill. Apr. 9, 2019) ("A tax deed petition proceeds *in rem* not *in personam*.") (*citing Smith v. D. R. G., Inc.*, 344 N.E.2d 468, 470 (Ill. 1976)). Thus none of these claims are direct claims against a debtor.

---

[6]    *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *In re Wheaton Oaks Office Partners Ltd. P'ship*, 27 F.3d 1234, 1244 (7th Cir. 1994) (it is state law that controls creation and perfection of interests in property).

[7]    The Illinois statutes with respect to this are hopelessly muddled and no clarification has been provided by either of the parties. It appears that under the statute, the Redemption Amount must be paid by interested parties to the taxing authority, not the tax purchaser. 35 ILCS 200/21-355 ("Any person desiring to redeem shall deposit an amount specified in this Section *with the county clerk of the county in which the property is situated, ... .*") (emphasis added). Nothing in the statute seems to explain how, if at all, such Redemption Amount is paid to the tax purchaser. However, elsewhere in the statute there is reference to a payment being made for the benefit of the purchaser, 35 ILCS 200/21-240 ("No redemption shall be made without payment of this amount for the benefit of the purchaser ... ."), though the amount referenced therein is not the Redemption Amount, precisely, but the lien for taxes for the amount paid plus 5% interest. *Id.* Nonetheless, eventual payment to the tax purchaser must occur, as it is only upon "receipt of the redemption money on any property by any purchaser or assignee" that the purchasers claim against the subject property is released. 35 ILCS 200/21-390; *see also In re Cty. Treasurer*, 881 N.E.2d 576, 580 (Ill. App. Ct. 2007).

So Wheeler has a right to reimbursement, thus a claim, but not one against the Debtor herself. Wheeler's Claim is, though, also an *in rem* claim against property of the bankruptcy estate. As noted above, the Property remains property of the Debtor unless and until such time as a tax deed is issued and recorded. *See LaMont*, 740 F.3d at 406; *Smith I*, 614 F.3d at 660; *Application of Cty. Treasurer*, 914 N.E.2d at 1165. As such, the Property is property of the bankruptcy estate, 11 U.S.C. § 541(a); *LaMont*, 740 F.3d at 406; *West*, 507 B.R. at 257, and the Bankruptcy Code makes clear that allowed claims encompass both claims against debtors personally and claims against property of the estate. 11 U.S.C. § 502(b)(1). As such, Wheeler has an allowable claim in this case.

This does not end the inquiry into this aspect of the Claim, however, as it must also be considered whether this aspect of the Claim is contingent, whether it is secured (and if secured, perfected) and its value.

### i.     Contingent or Noncontingent

The Bankruptcy Code does not define what makes a claim contingent. Contingent claims are claims within the meaning of section 101. 11 U.S.C. § 101(5)(A). Whether or not a claim is contingent has meaning in certain contexts in bankruptcy, *see, e.g.*, 11 U.S.C. § 109(e) (including only noncontingent claims in the calculations of who may be a debtor), but is not grounds for disallowing a claim. 11 U.S.C. § 502(b)(1).

The Seventh Circuit has stated that "[a] 'contingent' claim is one conditioned upon some future event that is uncertain." *Saint Catherine Hosp. of Ind., LLC v. Ind. Family & Soc. Servs. Admin.*, 800 F.3d 312, 317 (7th Cir. 2015); *see also Freeland v. Enodis Corp.*, 540 F.3d 721, 730 (7th Cir. 2008) ("A contingent liability is 'one that depends on a future event that may not even occur[] to fix either its existence or its amount.'") (*quoting In re Knight*, 55 F.3d 231, 236 (7th Cir. 1995)). As claims are measured on the date of commencement of a bankruptcy case, 11 U.SC. § 502(b) ("the court … shall determine the amount of such claim … as of the date of the filing of the petition"); *In re Lantz*, 446 B.R. 850, 858 (Bankr. N.D. Ill. 2011) (Barbosa, J.), such a future event might include events that have actually occurred postpetition by the time a claim objection is heard. The occurrence of some event postpetition, however, does not affect allowance because the condition that makes a claim contingent is not meaningful except in estimating the value of the contingency. *See, e.g.*, 11 U.S.C. § 502(c).

Here, there is no question that Redemption Claim portion of the Claim was not contingent on the Petition Date even though this aspect of the Claim might be extinguished at a later point, for example by the issuance of a tax deed. 35 ILCS 200/22-40(b). There is no future event upon which allowance of this aspect of the Claim is conditioned.

### ii.     Secured/Perfected

As noted in *Robinson*, Illinois law affords tax purchasers such as Wheeler "a lien against the property combined with equitable remedies." *Robinson*, 577 B.R. at 303.

Neither party appears to dispute this. Under the Illinois Property Tax Code, local real estate taxing authorities in Illinois are afforded liens for unpaid taxes. 35 ILCS 200/21-70. That lien is "a prior and first lien on the property, superior to all other liens and encumbrances … until the taxes are paid or until the property is sold under [the Property Tax] Code." 35 ILCS 200/21-75. The sale

of those taxes extinguishes the taxing authority's lien in the property, *In re Rosewell*, 537 N.E.2d 762, 766 (Ill. 1989); *Gan B*, 575 B.R. at 378, but gives rise to a lien "in favor of the purchaser, his or her heirs or assigns, until paid with 5% interest per year on that amount from the date the purchaser paid it." 35 ILCS 200/21-240; *LaMont*, 740 F.3d at 404.

As such lien is enforceable against property of the estate, it is allowable. 11 U.S.C. § 502(b)(1); *Johnson*, 501 U.S. at 78; *LaMont*, 740 F.3d at 409. It is also secured to the extent of Wheeler's enforceable interest in the bankruptcy estate's interest in the Property. 11 U.S.C. § 506(a). As a statutory lien, Wheeler's lien is perfected according to the terms of the statute. *Pedersen & Houpt, P.C. v. Main St. Vill. W., Part 1, LLC*, 4 N.E.3d 62, 70 (Ill. App. Ct. 2012), *as modified* (Mar. 12, 2013) ("'The character, operation and extent of [a statutory] lien must be ascertained from the terms of the statute ... and then only where there has been substantial compliance with all the statutory requirements.' (Internal quotation marks omitted.)") (*quoting United States v. Beaver Run Coal Co.*, 99 F.2d 610, 612 (3d Cir. 1938)); *cf. Nat'l Bank of Joliet v. Bergeron Cadillac, Inc.*, 361 N.E.2d 1116, 1117 (Ill. 1977) (stating the same proposition for statutory liens in personal property under section 9-310 of the Illinois Uniform Commercial Code). Unfortunately, the statute appears to contain no mechanism for perfection of tax purchaser liens specifically and no party has expressly addressed the perfection of Wheeler's lien.

The lien nonetheless appears to be perfected for several reasons. First, liens of tax purchasers are in part a continuation of taxing authorities' liens. 35 ILCS 200/21–240 ("The lien for taxes for the amount paid *shall remain* on the property ....") (emphasis added); *City Realty Exchange*, 262 N.E.2d at 233 (a tax purchaser's lien is a lien for taxes under the Illinois statutes). The authorities' liens are afforded priority under the Illinois statute, 35 ILCS 200/21-70, and such priorities have been held to be self-perfecting. *Scheickert v. AG Servs. of Am., Inc.*, 823 N.E.2d 213, 215 (Ill. App. Ct. 2005). Second, Illinois courts have upheld the perfection and priority of tax liens in such scenarios. *Pappmeier v. Green Tree Acceptance, Inc.*, 550 N.E.2d 574, 575 (Ill. App. Ct. 1990); *Tubbs v. Dunlop*, 59 N.E.2d 514, 517-18 (Ill. App. Ct. 1945). Third, the lien arose through a public sale process, thus providing the notice to third parties upon which perfection is ordinarily premised. 35 ILCS 200/21-345 to 397. Last, where the statute provides no method of perfection, at least one federal appellate court has found that that, in and of itself, equates to automatic perfection. *In re Loretto Winery Ltd.*, 898 F.2d 715, 719 (9th Cir. 1990) (unperfected statutory liens where statute provides no method of perfection are deemed perfected for the purposes of bankruptcy and collecting cases with similar holdings).

It is also the Debtor's burden in bringing the Claim Objection to overcome the *prima facie* validity of the Claim. *Kaiser*, 525 B.R. at 704. Given that the foregoing factors are sufficient for the court to conclude that the lien is perfected and that the Debtor has raised no argument to the contrary, the court concludes that the Redemption Claim aspect of the Claim is both secured and perfected.

　　　　　iii.　　　　Liquidation and Value

Wheeler has asserted that the Redemption Claim is $51,844.84. Though it is unclear under Illinois law exactly what amounts are owed to tax purchasers (as opposed to owed to the taxing authorities in order to redeem), the statute appears to afford tax purchasers a lien for the entire redemption amount and the Debtor has made no argument to the contrary. As a result, the court concludes that this aspect of Wheeler's Claim is liquidated in the amount of $51,844.84. As that

amount is far less than the Debtor's interest in the Property, the entire Redemption Claim is secured. 11 U.S.C. § 506(a).

It is not meaningful to this analysis that the Redemption Deadline has passed. As noted above, Wheeler's lien exists until Wheeler is paid. 35 ILCS 200/21-240. The expiration of the redemption period plays no role in determining the lien's validity and value.

Wheeler thus has an allowed, secured and perfected, noncontingent claim of $51,844.84. This is not, however, the end of Wheeler's Claim.

      b.      The Equitable Remedy

Wheeler also has the right to seek to recover on its Certificate of Purchase through the issuance of a tax deed. 35 ILCS 200/22-30. It is this right that Wheeler must rely on in asserting that its Claim is for the fair market value of the Property (the "Equitable Remedy").

If Wheeler were successful in obtaining a tax deed, Wheeler would be entitled to ownership of the Property. 35 ILCS 200/22-55; *Tubbs*, 59 N.E.2d at 517-18. This right, to seek ownership through the tax deed process, exists whether or not the Redemption Deadline has passed. What has changed, as discussed below, is the effect of the payment of the Redemption Claim.

Similar rights have been characterized by the Supreme Court as an equitable remedy. *See Johnson*, 501 U.S. at 84. In *LaMont*, the Seventh Circuit discussed at length the rights of a tax purchaser, concluding as did the Supreme Court in *Johnson*, that a tax purchaser has a "right to an equitable remedy for breach of performance." 740 F.3d at 408. As the Seventh Circuit stated, "what the tax sale procedure does is sell the county's equitable remedy to a third party, the tax purchaser." *Id.* Such equitable remedies are claims within the meaning of the Bankruptcy Code. 11 U.S.C. § 101(5)(B) (claims include "a right to an equitable remedy").

That a claim is contingent is not, in and of itself, grounds for objecting to a claim. *Compare* 11 U.S.C. §§ 502(b)(1) & (c) *with* 11 U.S.C. § 502(e)(1)(B). In fact, and as discussed in detail below, as section 502(b)(1) of the Bankruptcy Code makes clear, a claim that might otherwise be disallowed on enforceability grounds may not be so disallowed if the enforceability defect is because of the contingent nature of the claim.

Thus the asserted Equitable Remedy aspect of Wheeler's Claim is also cognizable in bankruptcy and requires the same consideration as the Redemption Claim aspect of the Claim.

      i.      Contingent or Noncontingent

As noted above, a "'contingent' claim is one conditioned upon some future event that is uncertain." *Saint Catherine Hosp. of Ind., LLC*, 800 F.3d at 317. The Seventh Circuit has stated that "the tax buyer acquires only a contingent right to a tax deed." *Smith I*, 614 F.3d at 660. This court agrees.

The future, uncertain event is the award of the tax deed from the state court. The award is uncertain as the court may deny a purchaser its request for the deed. 35 ILCS 200/22-50; *see also, e.g., In re Application of Cty. Collector*, 72 N.E.3d 416, 419-20 (Ill. App. Ct. 2017) (explaining the specific statutory requirements for a buyer to obtain a tax deed and upholding the refusal below to issue a

tax deed where the tax purchaser had failed to comply with all the statutory requirements and prerequisites). That the state court has more than a ministerial role is a function of the Illinois Constitution, which provides that "real property shall not be sold for the nonpayment of taxes or special assessments without judicial proceedings." Ill. Const. Art. IX, § 8(a). Were the court's function not substantive, the tax sale procedure would not afford debtors the constitutional protections to which they are entitled. The state court does not simply rubber stamp the sale.

To obtain the tax deed, the tax purchaser must strictly comply with notice requirements and demonstrate the same to the state court. 35 ILCS 200/22-40(a). The purchaser must also demonstrate to the state court that "all advancements of public funds under the police power made by a county, city, village or town ... have been paid and the [purchaser] has complied with all the provisions of law entitling him or her to a deed." *Id.*; *see also* 35 ILCS 200/22-35. The court may also allow redemption even though the statutory period has passed. *In re Application for a Tax Deed,* 115 N.E.3d 974, 980 (Ill. Ct. App. 2018) (Illinois law and public policy favor liberal construction of redemption laws and thus permit equitable redemption after the statutory deadline); *see also Cty. Treasurer,* 881 N.E.2d at 581 (reconciling public policies of liberal redemption versus merchantability of tax deeds in favor of the former). Should the tax purchaser fail to act within the appropriate time frame, the request fails. 35 ILCS 200/22-85.[8] Finally, the entire tax sale and deed process may be challenged on legal sufficiency grounds which, if successful, may act to prevent the issuance of a deed or set aside a deed already issued. 35 ILCS 200/21-310; 35 ILCS 200/22-80; 35 ILCS 200/22-95.

It is clear, therefore, that the Equitable Remedy is contingent.

ii.        Secured/Perfected

There is no question that all of Wheeler's Claim, including both the Equitable Remedy aspect and the Redemption Claim aspect, is *in rem* only. There is no recourse against a debtor personally for such claims under Illinois law. *Phx. Bond,* 2019 WL 1552758, at *2; *Bonfiglio,* 2015 WL 5612194, at *2; *Davenport,* 268 B.R. at 165.

As discussed above, the Redemption Claim aspect of Wheeler's Claim is entitled to secured, perfected status as a statutory lien. 35 ILCS 200/21-240; *LaMont,* 740 F.3d at 404; *see also* 35 ILCS 200/21-70. That statutory lien secures the payment of the "tax principal, special assessments, interest and penalties paid by the tax purchaser together with costs and fees of sale and fees paid under Sections 21-295 and 21-315 through 21-335." 35 ILCS 200/21-355.

Notably absent in this list is any mention of the contingent expectancy of receiving a tax deed. As statutory liens are explicitly limited to the language of the statute itself, *Pedersen & Houpt,* 4 N.E.3d at 70, the Equitable Remedy aspect of Wheeler's Claim cannot look to the statutory lien as a source of perfected status. It is not made expressly part of the lien in the statute.

What results is somewhat of an anomaly, an *in rem* claim that is not afforded state law lien status or perfection.

---

[8]        Of course, a tax purchaser may simply decide not to proceed, a likely event should it, for example, be found that the property in question is subject to environmental risks that must be remedied by owners.

This amorphous state is consistent with Wheeler's rights under Illinois law outside of bankruptcy. For example, when the court asked Wheeler whether its Claim would be paid a higher amount after the expiration of the Redemption Period should the Property be foreclosed upon by another creditor prior to the issuance of a tax deed, the answer was clearly that it would not. Unless and until a tax deed is issued, Wheeler's *in rem* Equitable Remedy cannot be realized. While the expectancy of the tax deed has meaning, it is meaning that would not result in any higher recovery outside of bankruptcy unless and until the contingency of the issuance of a tax deed has occurred.

Wheeler nonetheless argues that the Equitable Remedy should be afforded full weight as a secured claim today. That argument is inconsistent with existing law in this regard as this court has stated in other contexts:

> The argument that a party has today what a court may order tomorrow flies in the face of the Seventh Circuit's analysis in *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 792 (7th Cir. 2011). *Grede* addressed whether a state taxing authority, who had no lien on a bankruptcy petition date, could claim a prior interest in the property in question. The Seventh Circuit held that it could not, stating that the utility "only had the possibility of an interest in [the debtor's property when [the debtor] filed its bankruptcy petition." *Id.*

*Walden Invs. Grp. v. First Nations Bank (In re Montemurro)*, 580 B.R. 490, 500-01 (Bankr. N.D. Ill. 2017) (Barnes, J.) (footnote omitted).

When faced with unperfected *in rem* only claims, some courts have thus concluded that such claims must be disallowed. *In re Sandrin*, 536 B.R. 309, 321 (Bankr. D. Colo. 2015) (nonrecourse *in rem* claim was a claim in a debtor's chapter 13 case); *In re Rosa*, 521 B.R. 337, 340-42 (Bankr. N.D. Cal. 2014) (no claim allowable for deficiency claim in a chapter 20 case); *In re Sweitzer*, 476 B.R. 468, 471 (Bankr. D. Md. 2012) (same). Other courts find such a result anathematic. *In re Hoffman*, 538 B.R. 57, 65 (Bankr. D. Idaho 2015) (section 506(a) of the Bankruptcy Code converts a nonrecourse *in rem* claim into a recourse unsecured claim against a bankruptcy estate); *In re Gounder*, 266 B.R. 879, 881 (Bankr. E.D. Cal. 2001), *aff'd sub nom. Gounder v. Real Time Sols., Inc.*, Case No. CIV.A. S-01-1707-WBS, 2001 WL 1688479 (E.D. Cal. Dec. 19, 2001) (same).

Such nonrecourse claims might arise in a number of contexts other than the one at bar. In *Rosa*, it was a chapter 20 case—a chapter 7 case discharging a debtor's *in personam* liability followed by a chapter 13 case in which stripoff or reduction of lien is sought. 521 B.R. at 340-42. In *Gounder*, the court was faced with California law where mortgage deficiencies are nonrecourse. 266 B.R. at 881. In this case, the difference is that the nonrecourse claim is the Equitable Remedy aspect of Wheeler's Claim, which is an unperfected *in rem* only claim.

Wheeler's Equitable Remedy is unenforceable against the Property in bankruptcy only because it is contingent as of the Petition Date. As a result, it does not meet the requirements for disallowance under section 502(b)(1) of the Bankruptcy Code, as that section specifically finds a claim unenforceable against property to be disallowable, but not if the reason it is unenforceable is because it is contingent. 11 U.S.C. § 502(b)(1) (disallowed if unenforceable "for a reason other than because such claim is contingent or unmatured"). The Equitable Remedy remains contingent in large part because the automatic stay prevents Wheeler from proceeding. As a result, it must be allowed.

The Equitable Remedy is, however, an unperfected *in rem* remedy. In that regard, the court agrees with those courts that have held that section 506 requires the resulting claim to be treated as an unsecured claim against the bankruptcy estate. *E.g., Hoffman*, 538 B.R. at 65. Section 506 limits secured claims "to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a)(1).[9] As Wheeler cannot enforce the Equitable Remedy against creditors except by obtaining a tax deed, which cannot occur here because of the bankruptcy, there is no present enforceable value to Wheeler's interest in the Property. As a result, the Equitable Remedy portion of the Claim must be treated as unsecured under section 506. 11 U.S.C. § 506(a)(1) (such a creditor's interest is unsecured when the value of the interest of the creditor is less than the creditor's claim). The same result is reached if the Debtor were to exercise the power of avoidance over the Equitable Remedy or the later issuance of a tax deed. *See* 11 U.S.C. § 544.[10]

iii.       Liquidation and Value.

Wheeler's Equitable Remedy is, therefore, a contingent, unsecured claim for the purposes of these bankruptcy proceedings. What remains is to determine the value of that aspect of Wheeler's Claim. That determination requires the court to delve into section 502(c) of the Bankruptcy Code.

Contingent claims are either fixed in the claims allowance process or estimated in that same process under section 502(c). 11 U.S.C. § 502(c). Section 502 states, in pertinent part, that:

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c).

Under section 502(c), if fixing the amount of a contingent claim would unduly delay case administration, for example, by significantly delaying confirmation, the court must estimate the amount of the contingent claim as necessary for the case to move forward. 11 U.S.C. § 502(c); *In re Aaura, Inc.*, Case No. 06 B 01853, 2006 WL 2568048, at *5 (Bankr. N.D. Ill. Sept. 1, 2006) (Wedoff,

---

[9]    While section 506(a)(1) begins by referencing creditors asserting liens in property, the Bankruptcy Code's definition of lien to be a "charge against or interest in property," 11 U.S.C. § 101(37), is sufficient to include this *in rem* interest.

[10]    While the parties have not raised section 544 avoidance in their arguments, the issue is before the court by virtue of the Claim Objection. 11 U.S.C. § 502(d); *Comm. of Unsecured Creditors v. Commodity Credit Corp. (In re KF Dairies, Inc.)*, 143 B.R. 734, 737 (B.A.P. 9th Cir. 1992) (section 502(d)'s existence means that a court may undertake an avoidance determination in the context of a claim objection, without the need for an adversary proceeding); *In re Badger Lines, Inc.*, 199 B.R. 934, 939-40 (Bankr. E.D. Wis. 1996), *aff'd*, 206 B.R. 521, 527 (E.D. Wis. 1997) (applying the so-called "majority rule" stated in *KF Dairies* to allow defensive use of avoidance after expiration of the section 546 time to bring offensive actions); *see also, e.g., Lassman v. Poulos (In re Am. Pie, Inc.)*, 361 B.R. 318, 322-26 (Bankr. D. Mass. 2007) (the trustee may use section 544 defensively in objecting to a claim against the estate). As noted above, the parties were also given an opportunity to object to the court considering section 544 in this Memorandum Decision and chose not to.

J.). Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure provide guidelines for the estimation of claims, however. *Kreisler*, 407 B.R. at 328.

As a result, while the estimation of a contingent claim is a fact intensive analysis, the manner in which that analysis is done is generally left to the discretion of the court. As this court has stated previously,

> [A] bankruptcy court "has broad discretion when estimating the value of an unliquidated claim." *Ryan v. Loui (In re Corey)*, 892 F.2d 829, 834 (9th Cir. 1989) (*citing to Addison v. Langston (In re Brints Cotton Mktg., Inc.)*, 737 F.2d 1338, 1341 (5th Cir. 1984); *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 136 (3d Cir. 1982)). [A] District Court … "can reverse a bankruptcy court's decision on the method for ascertaining the value of claims only when it is so fundamentally wrong that no reasonable person could agree with it." *Beatrice Co. v. Rusty Jones, Inc.*, 153 B.R. 535, 536 (N.D. Ill. 1993) (*citing to Libby v. Illinois High School Ass'n*, 921 F.2d 96 (7th Cir. 1990)).

*In re Elk Grove Vill. Petroleum, LLC*, 562 B.R. 708, 719 (Bankr. N.D. Ill. 2016) (Barnes, J.), *aff'd sub nom. Ill. Dep't of Revenue v. Hanmi Bank*, 895 F.3d 465 (7th Cir. 2018). This does not, however, "require that a bankruptcy court be clairvoyant." *In re Federal Press Co.*, 116 B.R. 650, 653 (Bankr. N.D. Ind. 1989) (*quoting In re Baldwin–United Corp.*, 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985)).

Here, what has been asserted is easily determinable in amount. While the Claim asserts that the Property is worth more than $300,000.00, the parties have since stated in hearings before the court that the Property's value is as is contained in the Proposed Plan and the Debtor's Amended Schedules—$272,508.00. That cannot be the true value of the contingency, however, as the noncontingent claim will be realized as part of the tax deed and Wheeler is not entitled to double recovery. *In re Doctors Hosp. of Hyde Park, Inc.*, 494 B.R. 344, 358 (Bankr. N.D. Ill. 2013) (Schmetterer, J.) (finding that Illinois law adheres to the single recovery principle); *In re Anson*, 457 B.R. 130, 137 (Bankr. M.D. Fla. 2011) ("[b]ankruptcy cases are governed by overriding equitable principles, and equity abhors a windfall."). The value of the Equitable Remedy is, therefore, the Property's value of $272,508.00 minus the value of the $51,844.84 Redemption Claim. This amount is $220,663.16.

The complexity lies not with that determination, but instead in determining whether the contingent aspect of the remedy results in another, smaller amount owed.

Some courts have approached the weighing or estimating of outcomes on a sliding scale of how likely the contingency is to occur, but while recognizing that practice, the Third Circuit Court of Appeals has concluded such an approach is not required. *Bittner*, 691 F.2d at 136. In *Bittner*, creditors whose claims were estimated at zero by the bankruptcy court appealed challenging that estimation. *Id.* The creditors argued that the bankruptcy court was required to estimate their claims on a sliding scale rather than the court's apparent determination that the creditors were unlikely to meet their state law burdens and thus their claims were zero. *Id.* at 136-37. The Third Circuit Court affirmed the bankruptcy court's estimation of claims, however, finding that such a binary methodology was not an abuse of the court's discretion. *Id.* at 136.

Here, the parties have in large part dictated a similar outcome by their filings. Neither party has given the court any method by which it could determine the likelihood of the contingency occurring other than as a binary choice. Either the right to a tax deed exists, or it does not.

It is clear from the parties' arguments that, as a matter of state law, the passing of the Redemption Deadline removes the major impediment, the payment of the Redemption Amount, to the remainder of the conditions being fulfilled.[11] Prior to the passing of the Redemption Deadline, the contingency is highly unlikely to occur as a debtor can extinguish the tax purchaser's claim by the payment of the Redemption Amount. 35 ILCS 200/21-345 to 397. After the passing of the Redemption Deadline, however, the likelihood of the contingency occurring has dramatically increased. While the court-ordered issuance of the tax deed is still a formidable condition, it is the court's determination that, after the expiration of the Redemption Period, the issuance of the tax deed is more likely than not to occur. Thus, in keeping with the parties' binary approach to this matter, the contingency must be treated as if it will occur.

That means that the Equitable Remedy aspect of Wheeler's Claim must be estimated for the purpose of allowance at its full asserted value of $220,663.16, the agreed value of the Property less Wheeler's lien claim.

While this result is dictated by the Bankruptcy Code, the Illinois statutes and existing case law, it is also in keeping with prior practice in this District and the overall equities in this matter.

*Robinson's* application of recent Seventh Circuit law opened up the possibility that a debtor may treat a tax purchaser's claim and the underlying property in a chapter 13 plan even after the passing of the Redemption Deadline. Today's holding demonstrates that allowing the Redemption Deadline to pass without redeeming the tax debt nonetheless comes at a price. In proposing a plan, a debtor must account for the increased likelihood that the contingency will occur by allowing the deadline to pass. Doing so in a manner that, as an unsecured claim, does not elevate a tax purchaser's contingent, equitable remedy over other secured creditors, appears to properly reflect all parties' respective interests. The cost that will be borne by a debtor will, however, in large part, be determined or weighed by the debtor's equity in the property in question—as is appropriate given the nature of such claims.

This also means that the courts that have, following either *Robinson* or *Bates*, found that prior to the passing of a redemption deadline that a tax purchaser's claim is limited to the redemption amount have not, therefore, erred. That outcome is no different than allowing the secured claim and estimating the equitable remedy—which exists even prior to the redemption deadline—as zero.

## CONCLUSION

Accordingly, Wheeler's allowed Claim must be determined as follows: (i) a secured, perfected and noncontingent claim in the amount of $51,844.84; and (ii) an unsecured, contingent claim in the amount of $220,663.16. For the reasons set forth herein and by separate order entered concurrently herewith, the Claim Objection will be sustained in part and overruled in part. Further, as a result,

---

[11]    The court notes that even the passing of the Redemption Deadline does not definitively foreclose redemption under Illinois law, as the courts have confirmed the power to equitably redeem property past the statutory deadlines. *See, e.g., Cty. Treasurer*, 881 N.E.2d at 581-83.

the Confirmation Objection will also be sustained in the limited respect that the Proposed Plan does not treat the Claim as set forth herein but will otherwise be overruled.

Dated: April 30, 2019                                ENTERED:

Timothy A. Barnes
United States Bankruptcy Judge